CC-200

## COUNTY OF WINNEBAGO
## NEW CASE INFORMATION SHEET

CASE NO. _14 L 299_

Sub-Case Type:

☒ (L)   ❑ (AR)   ❑ (LM)   ❑ (SC)   ❑ (TX)   ❑ (ED)   ❑ (MR)   ❑ (CH)   ❑ (MC)   ❑ (AD)

❑ (F)   ❑ (D)   ❑ With Children   ❑ W/O Children   ❑ (P)   ❑ Guardianship   ❑ Decedents Estate

---

**Case Type:** _Personal Injury_     **Total Maximum Claim Amount $**_____

Jury Demand:          ❑ Six      ☒ Twelve

Summons Issued:     ❑ SH-W    ☒ PPS     ❑ None      ❑ Other

---

**Type or Print** the following information. *Please list **ALL** parties using an additional sheet if necessary.*

1st **Plaintiff: Eric Trotter**

Address: **11044 Chicory Ridge Way**

City: **Roscoe**     State: **IL**

Zip **61073** Tele.# **(815) 914-7960**

Date of Birth **1/7/67**

1st **Defendant: Harleysville Insurance Company**

Address: **355 Maple Ave.**

City: **Harleysville**     State: **PA**

Zip **19438** Tele.#_____

Date of Birth_____

2nd **Plaintiff:**_____

Address:_____

City:_____ State:____

Zip_____ Tele.#_____

Date of Birth_____

2nd **Defendant:**_____

Address:_____

City:_____ State:____

Zip_____ Tele.#_____

Date of Birth_____

---

☒ **Attorney(s) for the Plaintiff(s) or** ❑ **Pro Se: Rodney W. Kimes**

Address: **542 E. Grand Ave.**

City: **Beloit**     State **WI** Zip **53511** Tele.# **(608) 365-7702**

Attorney ARDC #: **06211305**     Firm Name **Bolgrien, Koepke & Kimes, S.C.**

Filed this_____ Day of_____ 20_____

Rev 4.27.10

CC-200.1

# COUNTY OF WINNEBAGO
## NEW CASE INFORMATION SHEET
### Continued

**CASE NO.** _____

**Case Type: <u>Personal Injury</u>** _____ **Total Maximum Claim Amount $** _____

3rd **Plaintiff:** _____  3rd **Defendant:** _____

Address: _____  Address: _____

City: _____ State: _____  City: _____ State: _____

Zip _____ Tele # _____  Zip _____ Tele.# _____

Date of Birth _____  Date of Birth _____

4th **Plaintiff:** _____  4th **Defendant:** _____

Address: _____  Address: _____

City: _____ State: _____  City: _____ State: _____

Zip _____ Tele.# _____  Zip _____ Tele.# _____

Date of Birth _____  Date of Birth _____

5th **Plaintiff:** _____  5th **Defendant:** _____

Address: _____  Address: _____

City: _____ State: _____  City: _____ State: _____

Zip _____ Tele # _____  Zip _____ Tele.# _____

Date of Birth _____  Date of Birth _____

6th **Plaintiff:** _____  6th **Defendant:** _____

Address: _____  Address: _____

City: _____ State: _____  City: _____ State: _____

Zip _____ Tele.# _____  Zip _____ Tele.# _____

Date of Birth _____  Date of Birth _____

FILED
Date: 10, 3, 14
Thomas A. Klein
Clerk of the Circuit Court
By _____ Deputy
Winnebago County, IL

STATE OF ILLINOIS
SEVENTEETH JUDICIAL CIRCUIT COURT
WINNBAGO COUNTY

ERIC TROTTER
11044 Chicory Ridge Way
Roscoe. IL 61073
        Plaintiff,
v.
HARLEYSVILLE INSURANCE
COMPANY
355 Maple Avenue
Harleysville, PA 19438
        Defendant.

Case No.: 2014 L 299

---

## COMPLAINT

NOW COMES the Plaintiff. Eric Trotter by his attorneys BOLGRIEN, KOEPKE & KIMES. S.C., by Rodney W. Kimes and for his Complaint for Declaratory Judgment pursuant to 735 ILCS 5/2-701 states as follows:

### COUNT I – DECLARATORY RELIEF

1.     Plaintiff Eric Trotter is at all times relevant hereto was an adult who resides at 11044 Chicory Ridge, Village of Roscoe, County of Winnebago, Illinois.

2.     Defendant Harleysville Insurance Company is at all-times material herein was a foreign insurance company licensed to transact business in the State of Illinois.

3.     Plaintiff was injured in a motor vehicle accident on July 14, 2011 at Hononegah Road. Village of Roscoe in Winnebago County, Illinois.

4.     Defendant issued an Insurance Policy (Herein after referred to as "Defendant's Policy") to Plaintiff and said policy covered Plaintiff for said motor vehicle collision. A copy of said policy is attached hereto and incorporated herein by reference as Exhibit A.

5.     "Defendants Policy" has underinsured limits of a single limit of $500,000.00 attached hereto and incorporated herein by reference as Exhibit B is a correct copy of the Declarations Page of said policy.

1

6. Plaintiff settled with County Mutual herein after referred to as the "Liability Insurance" after giving Defendant the opportunity to substitute funds. Attached hereto and incorporated herein by reference as Exhibit C is a copy of said offer and attached hereto and incorporated herein by reference as Exhibit D is a copy of said response from Harleysville.

7. Liability Insurer paid its Policy Limits of $250,000.00 to Plaintiff pursuant to its policy of insurance on the Plaintiff's claim.

8. Liability Insurer also paid $250,000.00 on other claims arising out of the accident which totaled an additional $250,000.00 and where not paid to this Plaintiff.

9. Plaintiff, Eric Trotter, requested payment of his underinsured claim pursuant to the policy of insurance, attached hereto and incorporated by reference is a letter dated July 26, 2013 marked as Exhibit E.

10. Defendants conferred that they are entitled to set off the entire amount paid by the Liability Insurer to the claims of Plaintiff attached hereto an incorporated herein by reference as Exhibit F is a letter dated September 13, 2013.

11. Plaintiff seeks a declaration that coverage exists and that Defendants application of the set off in this case is an error.

WHEREFORE, Plaintiff requests the Court enter and Order declaring Defendant's Policy of Insurance provides coverage to Plaintiff in the amount of $500,000.00 subject to a set off of $250,000.00, and for such other and further relief as the Court deems appropriate given the circumstances.

## COUNT II – BAD FAITH

Plaintiff restates and realleges Plaintiff's Count I, paragraphs 1-11 and incorporates said paragraphs from Plaintiff's Complaint as if stated herein.

12. Defendant has a duty to act in good faith in responding to a settlement offer.

2

13.    Plaintiff has attempted to settle with Defendant within the Policy Limits of Defendants Policy or pursuant to the policy.

14.    Insurer rejected the ability to settle the claim pursuant to the policy of insurance. Plaintiff has incurred money damages in the amount of $250,000.00 plus attorney's fees and costs; as a result of the Defendant's failure to pay pursuant to its policy.

WHEREFORE, Plaintiff requests the following relief:

A.  Plaintiff requests that it be awarded Judgment for $250,000.00;

B.  Plaintiffs damages;

C.  Attorney's fees and costs pursuant to §155 of the Illinois Insurance Code;

D.  An additional amount not to exceed sixty percent (60%) of the judgment in favor of Plaintiff in this action pursuant to §155 of the Illinois Insurance Code;

E.  Other costs pursuant to §155 of the Illinois Insurance Code; and

F.  Any other just and equitable relief the court deems proper under the circumstances.

Dated this 1 day of Oct. , 2014

BOLGRIEN, KOEPKE & KIMES. S.C.
Attorneys for Plaintiff Eric Trotter

By: _____
       Rodney W. Kimes

Prepared by:
Rodney W. Kimes
ARDC No: 06211305
BOLGRIE, KOEPKE & KIMES, SC.
542 E. Grand Avenue
Beloit, WI 53511
rkimes@bolgrienlaw.com
(608) 365-7702



**Mid Atlantic Claims Service Center**
P.O. Box 198
Harleysville, PA 19438-9940
www.harleysvillegroup.com
Tel 888-634-4440
Fax 877-501-9348

September 13, 2013

CERTIFIED MAIL AND REGULAR MAIL

Rodney W. Kimes, Esquire
Bolgrien, Koepke & Kimes, S.C.
542 East Grand Avenue
Beloit, Wisconsin 53511

Re:  Claimants:  Eric Trotter, Connie Jackson and Kala Petrie
     Claim No.:   WI-005242R-VC-009
     Policy no:   PAAB24953

Dear Mr. Kimes:

Harleysville Lake States Insurance Company ("Harleysville") acknowledges receipt of the claims presented by Eric Trotter, Connie Jackson and Kala Petrie for underinsured motorist coverage under an automobile insurance policy issued to Mr. Trotter. For the reasons stated in this letter, Harleysville must deny these claims for underinsured motorist coverage. By setting forth certain policy terms which limit or exclude coverage, we waive no others, and specifically reserve all of Harleysville's rights under all terms, conditions, limitations, definitions and exclusions of the policy.

On July 14, 2011, Mr. Trotter was driving his vehicle when he was struck from behind by another driver. Connie Jackson and Kala Petrie were passengers in Mr. Trotter's vehicle. All three occupants of Mr. Trotter's vehicle allegedly sustained bodily injury and submitted claims for liability to the at-fault driver's insurer. The at-fault driver had automobile liability coverage with limits of $250,000 per person, $500,000 per accident. That insurer paid its respective policy limit of $500,000 per accident, with $250,000 paid to Mr. Trotter, $238,000 paid to Ms. Jackson, and $12,000 paid to Ms. Petrie for settlement of their claims against the at-fault driver.

Harleysville issued a personal automobile insurance, policy no. PAAB24953, to Eric S. Trotter, effective June 27, 2011 to June 27, 2012. The policy provides coverage for one vehicle, a 2009 Jeep Wrangler, and provides underinsured motorist coverage with a single limit of $500,000 each accident. The policy provides, in relevant part as follows:

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

   1. Sustained by an "insured"; and

   2. Caused by an accident.


EXHIBIT
A

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements, unless:

1. We have been given written notice of a "tentative settlement" and decide to advance payment to the "insured" in an amount equal to that settlement; or

2. We and an "insured" have reached a "settlement agreement."

B. "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person "occupying":

   a. "Your covered auto"; or

   b. Any other auto operated by you.

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury is either:

1. Less than the limit of liability for this coverage; or

2. Reduced by payments to others injured in the accident to an amount which is less than the limit of liability for this coverage.

## LIMIT OF LIABILITY

A. [This paragraph is replaced by an endorsement set forth fully below].

B. Except in the event of a "settlement agreement", the limit of liability for this coverage shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

C. In the event of a "settlement agreement", the maximum limit of liability for this coverage shall be the amount by which the limit of liability for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

The Harleysville policy contains the following endorsement:

### SINGLE UNDERINSURED MOTORISTS LIMIT

### SCHEDULE

**Underinsured Motorists Coverage** $_____ **each accident**

Paragraph **A.** of the **Limit of Liability** Provision in the Underinsured Motorists Coverage Endorsement is replaced by the following:

### LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages because of "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the Policy is written.

Harleysville must respectfully deny underinsured motorist coverage to Mr. Trotter, Ms. Jackson and Ms. Petrie. These insureds have received payments from the at-fault driver's insurer in a total amount equal to the Harleysville Limit of Liability for underinsured motorist coverage. As a result, Mr. Trotter, Ms. Jackson and Ms. Petrie are not entitled to any underinsured motorist coverage payments under the terms of the Harleysville policy.

The Harleysville policy provides a Limit of Liability of $500,000 in UIM coverage for any one accident. According to the policy, this Limit of Liability is the "maximum limit of liability" Harleysville will pay "regardless of the number of insureds [or] claims made."

The policy also provides that the Limit of Liability for UIM coverage "shall be reduced by all sums paid ... by or on behalf of persons or organizations who may be legally responsible." In this case, the insureds received a combined total of $500,000 from the driver legally responsible for their bodily injuries. Therefore, the Limit of Liability for underinsured motorist coverage for these claims is reduced to zero.

By stating certain policy terms, conditions, limitations and exclusions which limit or exclude coverage, Harleysville waives no others, and specifically reserves all of its rights under all terms, provisions, limitations, definitions and exclusions of the policy.

Sincerely,


Simcha Shaiman
Claims Specialist III
Harleysville Insurance
W. 888-634-4440


Cc:    Ms. Barbara James
       Williams – Manny, Inc.
       555 S. Perryville Road
       P.O. box 5466
       Rockford, IL 61125

**Harleysville**

*Good people to know*

Harleysville Lake States Insurance Company
600 East Front Street, Suite 200
Traverse City, MI 49686-2892
www.harleysvillegroup.com

**Personal Automobile Policy - Endorsement**

Insured: Eric S Trotter

Policy Number: PAAB24953

Company: Harleysville Lake States Insurance Company

| | |
|---|---|
| Effective Date: | 06/27/2013 |
| Expiration Date: | 06/27/2014 |
| Issue Date: | 11/15/2013 |
| Change Effective Date: | 11/05/2013 |

**Your Harleysville Independent Agent:**
WILLIAMS-MANNY INC
555 S PERRYVILLE RD
PO BOX 5466
ROCKFORD, IL 61125-
Phone: 815.398.6800
(Agency Code:12-8751)

Eric S Trotter
11044 Chicory Ridge Way
Roscoe, IL 61073-6367

**YOUR ANNUAL PREMIUM IS    $864.00**

The change in premium for this policy period is  $-619.00. New annual premiums are displayed below.

**Discounts You Have Earned**

Safe Driver Discount
Anti-lock Brake Discount
Anti-theft Discount
Driver Experience Credit
Multi-Car Discount
Outstanding Insurance Score
Passive Restraint Device Discount
Policyholder Discount

**What We Cover and the Cost of Your Protection**

THE LIMIT FOR EACH OF THE COVERAGES LISTED BELOW IS THE TOTAL AMOUNT AVAILABLE UNDER THIS POLICY IN THE EVENT OF A COVERED LOSS.

| Coverage | Limits |
|---|---|
| Liability | 500,000 each accident |
| Uninsured Motorist Bodily Injury | 500,000 each accident |
| Underinsured Motorist Bodily Injury | 500,000 each accident |
| Medical Payments | 5,000 each person |

**VEHICLES INSURED**

**2009 JEEP WRANGLER UNLIMI**

| Liability | Annual Premium |
|---|---|
| Liability | $243.00 |
| Uninsured Motorist Bodily Injury | $42.00 |
| Underinsured Motorist Bodily Injury | $33.00 |

A-133M 0707                           Insured Copy                                Page 1  of 3

**EXHIBIT**

*B*

## Harleysville

*Good people to know*

Harleysville Lake States Insurance Company
600 East Front Street, Suite 200
Traverse City, MI 49686-2892
www.harleysvillegroup.com

**Personal Automobile Policy - Endorsement**

Insured: Eric S Trotter

**Policy Number:** PAAB24953

| Medical Payments | | | $28.00 |
|---|---|---|---|
| **Damage to Your Auto** | **Limits/Deductibles** | | |
| Other than Collision | 250 deductible | | $63.00 |
| Collision | 1,000 deductible | | $213.00 |
| Towing and Labor | 100 per occurrence | | $18.00 |
| Transportation/Rental | 20 per day, up to 600 | | Included |
| Total Premium for **2009 JEEP WRANGLER UNLIMI** | | | **$640.00** |

### 2011 CHEVROLET CAMARO SS

| **Damage to Your Auto** | **Limits/Deductibles** | **Annual Premium** |
|---|---|---|
| Other than Collision | 250 deductible | $194.00 |
| Transportation/Rental | 20 per day, up to 600 | Included |
| Total Premium for **2011 CHEVROLET CAMARO SS** | | **$194.00** |

### Additional Policy Coverages/Charges

| **Coverages** | **Limits** | **Annual Premium** |
|---|---|---|
| ACE (Auto Coverage Enhancement) | | 30.00 |
| | Policy Subtotal | $864.00 |
| | Policy Fee | 0.00 |
| | **ANNUAL POLICY PREMIUM** | **$864.00** |

*Thank you for giving us the opportunity to provide your insurance protection*

**Driver and Vehicle Information Used to Determine Your Premium**

### Driver Information

| D# Driver Name | Principal or Occasional | Driver Training | Good Student | Student 100 Miles Away | Defensive Driver Course | Points |
|---|---|---|---|---|---|---|
| 1 Eric S Trotter | Principal | | No | | No | |

### Vehicle Information

| V# | Year Make / Vehicle ID | Model | Type | Other Than Collision Symbol | Collision Symbol | Rating Territory | Use | 1-Way Miles | Annual Miles |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 2009 JEEP 1J4GA39159L738634 | WRANGLER UNLIM | Standard | 6 | 6 | 78 | Work | 3-15 | 12,000 |
| 2 | 2011 CHEVROLET 2G1FK1EJXB9130459 | CAMARO SS | Standard | 37 | 45 | 78 | Pleasure | | 3,000 |

### Additional Vehicle Information (including safety equipment)

| V# | Year Make | Airbag Discount | Antilock Brake Discount | Anti-Theft Discount | Cost New | Class | Rated Driver | Vehicle Tier |
|---|---|---|---|---|---|---|---|---|
| 1 | 2009 JEEP | 20.0% | 5.0% | | | 832220 | Eric Trotter | Elite 8 |
| 2 | 2011 CHEVROLE | 20.0% | | 10.0% | | 832160 | Excess Vehicle | Standard 8 |

Harleysville Lake States Insurance Company
600 East Front Street, Suite 200
Traverse City, MI 49686-2892
www.harleysvillegroup.com

# Harleysville
*Good people to know*

**Personal Automobile Policy - Endorsement**

Insured: Eric S Trotter

Policy Number: PAAB24953

## Driver to Vehicle Count

Drivers 1     Vehicles 1

## Additional Interests

| Interest Name | Interest Type | Vehicle |
|---|---|---|
| Northwest Bank<br>3106 N. Rockton Ave<br>Rockford IL 61103 | Loss Payee | 2009 JEEP WRANGLER UNLIMI |

## Important Information about your policy

Regarding Underinsured Motorist Coverage:
These limits of liability will be reduced by payments received from other sources as provided in the Limit of Liability provision of the Underinsured Motorist Coverage Endorsement.

## Forms, Endorsements and Other Enclosures     * indicates copy enclosed

| | Form | Edition | Title |
|---|---|---|---|
| * | A133M | 0707 | Declaration Page |
| | A2436 | 0507 | A.C.E. Auto Coverage Enhancement Endorsement |
| | A2459 | 1012 | ID Card |
| | A2530 | 0308 | Domestic Dog and Domestic Cat Limited Coverage Endorsement |
| | GU1197 | 0706 | Privacy Notice |
| | GU1214 | 0507 | Personal Lines Cover Letter - Renewal |
| | LSU1IL | 1001 | Notice To Illinois Policyholders |
| | PJ0015 | 0308 | Policy Jacket |
| | PP0001 | 0698 | Personal Auto Policy |
| | PP0174 | 0304 | Amendment of policy provisions - Illinois |
| | PP0303 | 0486 | Towing And Labor Costs Coverage |
| | PP0305 | 0886 | Loss Payable Clause |
| | PP0309 | 0698 | Single Liability Limits |
| | PP0401 | 0698 | Single Uninsured Motorists Limit |
| | PP0402 | 0698 | Single Underinsured Motorists Limit |
| | PP0447 | 0409 | Underinsured Motorists Limit - Illinois |
| | PP1301 | 1299 | Coverage For Damage to Your Auto Exclusion Endorsement |

A-133M 0707     Insured Copy     Page 3   of 3



COUNTRY
FINANCIAL

Field Claims Center
~~P.O. Box~~
~~Bloomington, IL~~
~~(309) 255-7961~~

02/06/2013

Bolgrien, Koepke & Kimes, S.C.
Attorneys At Law
542 East Grand Avenue
Beloit, Wisconsin 53511

Re:     Claim #:        201-1012470
        Date of Loss:   7/14/2011
        Injured:        Eric Trotter

Dear Mr. Rodney Kimes:

Enclosed is a Release of All Claims for $250,000.00 for your client to sign and have witnessed Return it to me, to the Rockford Claims Office, 7015 Rote Road, Suite 101, Rockford, IL 61107, along with a photocopy of your client's photo ID or driver's license.

When I receive these documents, a settlement draft will be sent directly to your office.

If you have any questions, please feel free to call me at the number listed below.

Thank you for your prompt attention to this notice.

Sincerely,

COUNTRY Preferred Insurance Company[SM], Bloomington, IL

*Richard Roddewig*

Richard Roddewig
Sr. Claims Specialist - Field
(815) 394-5311
FAX: (866) 255-7961
dick.roddewig@countryfinancial.com

Enclosure

As we discussed, this amount includes all of the liens.



EXHIBIT
C

# RELEASE OF ALL CLAIMS

Claim #:        201-1012470
Date of Loss:   7/15/2011
Claimant:       Eric Trotter

KNOW ALL MEN: FOR AND IN CONSIDERATION of the payment to me at this time of the sum of Two Hundred Fifty Thousand and 00/100 dollars ($250,000.00), the receipt and sufficiency of which is hereby acknowledged, I, being of lawful age, do hereby release, acquit and forever discharge Powers Donna J and COUNTRY Preferred Insurance Company SM, Bloomington, IL of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on or about 7/15/2011 at or near Hwy 251, Roscoe, IL.

I hereby declare and represent that I was injured and in making this release and agreement it is understood and agreed that I rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

It is mutually understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the person, firm or corporation released, by whom liability is expressly denied.

It is further understood and agreed that this release and payment pursuant thereto is not to be construed as a waiver or estoppel of any party released to prosecute a claim or action for any damages sustained.

This release contains the ENTIRE AGREEMENT between the parties hereto and the terms of this release are contractual and not a mere recital.

I further state that I have carefully read the foregoing release and know the contents thereof, and I sign the same as my free act for the purpose of making a full and final compromise, adjustment and settlement of the injuries and damages mentioned above.

WITNESS my hand and seal this _____, day of_____.

In presence of:

_____          _____
                Signee                                  Signee – Eric Trotter


_____          _____
                Witness                                 Witness


_____          _____
                Dated                                   Dated



**Harleysville.**
*Good people to know*

Midatlantic Claims Service Center
P.O. Box 198
Harleysville, PA 19438-9940
sshaiman@harleysvillegroup.com
Tel 888-634-4440
Fax 800-441-4118

January 31, 2013

Rodney Kimes, Esquire
BOLGRIEN, KOEPKE & KIMES, S.C.
542 East Grand Avenue
Beloit, WI 53511.

**Your Client:**    Eric Trotter
**Claim Number**: W1005242U-VC-009
**Insured**:       Eric Trotter
**Date of Loss**:  07/14/11

Dear Mr. Kimes:

It was a pleasure speaking with you this afternoon in regards to the above-captioned matter. This will acknowledge receipt of your recent correspondence, confirm that I have been assigned to Mr. Trotter's underinsured motorist claim and have requested an asset search on the tortfeasor.

Please provide me with proof of the tortfeasor's limits.

If you have any questions, please contact me at my office.

Very truly yours,

Simcha Shaiman
Claims Specialist
888-634-4440
sshaiman@harleysvillegroup.com



EXHIBIT

12

# BOLGRIEN, KOEPKE & KIMES, S.C.
## ATTORNEYS AT LAW
OFFERING LEGAL SERVICES IN WISCONSIN AND ILLINOIS

WILLIAM A. BOLGRIEN
*JAMES J. KOEPKE
*RODNEY W. KIMES
*JEFFREY E. LIVINGSTON

* Licensed to practice law in IL & WI

July 26, 2013

Mr. Sincha Shaiman
Midatlantic Claims Service Center
PO Box 198
Harleysville, PA 19438-9940

RE: Eric Trotter
Claim No.: W1005242U-VC-009
Date of Loss: 07/14/2011

Dear Mr. Shaiman,

Pursuant to our recent discussions attached please find two cases that are helpful regarding the issue in our cases.

In *Jones c. State Farm Mutual Automobile Ins., Co.*, 289 Ill App. 3d 903, 382 NE 2d 238, 224 Ill Dec (1st Dist. 1997), an automobile accident where several people were injured. The Court dealt with a single limit Underinsured Policy. The Court found the "$1,000,000 dollar coverage is available to each insured who is entitled to bodily injury damages in connection with the accident."

In *Koperski v. AMICA Mutual Ins. Co.*, 287 Ill App. 3d 494, 678 NE 2d 734, 222 Ill Dec. 862 (1st Dist. 1997). The court held "the insured is entitled to claim benefits in an amount equaling the limits of his Underinsured Motorist Coverage, and the Insurer has the right to claim a set off for benefits received from the underinsured carrier."

"AMICA also contends that in determining whether Taminga's vehicle was underinsured the $350,000 per occurrence maximum provided by Taminga's "split limits" policy must be compared to the $300,000 single limit specified in the policy issued by AMICA. This argument has no merit." (287 Ill App. 3d 494, 678 NE 2d 734, 222 Ill Dec. 862 (1st Dist. 1997))

"We hold therefore, the trial court correctly determined that Taminga's vehicle was underinsured after comparing the Plaintiff's underinsurance benefits she received from Taminga's liability insurer. That comparison revealed that Plaintiff was entitled to claim $175,000 in underinsured benefits. It is precisely for this protection that Plaintiff negotiated and paid a premium, for the $300,000 limit on her Underinsured Motorist Coverage." (287 Ill App. 3d 494, 678 NE 2d 734, 222 Ill Dec. 862 (1st Dist. 1997))



EXHIBIT
C

Once you have had an opportunity to review this information, please contact me. I look forward to hearing from you.

BOLGRIEN, KOEPKE & KIMES, S.C.

Rodney W. Kimes

RWK/amd
Enc.
Cc: Eric Trotter



FOCUS - 4 of 7 DOCUMENTS

**JOANNA ADAMSKA KOPERSKI, Plaintiff-Appellee, v. AMICA MUTUAL IN-SURANCE COMPANY, a corporation, Defendant-Appellant.**

**No. 1-96-0046**

**APPELLATE COURT OF ILLINOIS, FIRST DISTRICT, SIXTH DIVISION**

*287 Ill. App. 3d 494; 678 N.E.2d 734; 1997 Ill. App. LEXIS 171; 222 Ill. Dec. 862*

**March 31, 1997, Decided**

**SUBSEQUENT HISTORY:** [***1] Released for Publication May 12, 1997.

**PRIOR HISTORY:** Appeal from the Circuit Court of Cook County. Honorable Ellis E. Reid, Judge Presiding.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For Amica Mutual Insurance Company, APPELLANT: Brenner & Moltzen, Ltd., of Chicago (Sheldon A. Brenner and Jane E. Reames, of counsel).

For Joanna Adamska Koperski, APPELLEE: Topper & Weiss, Ltd., of Chicago (Barry Weiss, of counsel).

**JUDGES:** JUSTICE ZWICK delivered the opinion of the court. THEIS, J., and QUINN, J., concur.

**OPINION BY:** ZWICK

**OPINION**

[*495] [**735] JUSTICE ZWICK delivered the opinion of the court:

Plaintiff brought this action seeking a declaration of her right to recovery under the underinsured motorist provision contained in the automobile insurance policy issued by defendant, Amica Mutual Insurance Company (Amica). The trial court granted summary judgment in favor of plaintiff, finding that Amica was obligated to provide coverage to plaintiff because the vehicle which was responsible for plaintiff's injuries was an "underinsured motor vehicle" as defined by the Illinois Insurance

Code ( *215 ILCS 5/143a-2(4)* (West 1994). Amica appeals the grant of summary judgment for plaintiff.

The undisputed facts establish that on September 15, 1989, while vacationing at Yellowstone Park, plaintiff was a passenger in a rental car operated by her husband and was injured when the car was struck from behind by a vehicle driven by Gary Dale Tamminga. [***2] Tamminga was also driving a rented car, which was insured under a policy issued by National Casualty Company which carried "split limits" of $ 25,000 per person and $ 50,000 per occurrence. Tamminga also had excess coverage for a vehicle he owned under a policy issued by State Farm Insurance Company which carried "split limits" of $ 100,000 per person and $ 300,000 per occurrence. Thus, the total amount of liability coverage [**736] carried by Tamminga equaled $ 125,000 per person and $ 350,000 per occurrence.

Plaintiff brought suit against Tamminga in the United States District Court for the Western District of Michigan. This action was dismissed in August 1994, pursuant to a settlement agreement under which plaintiff received $ 25,000 from National Casualty and $ 100,000 from State Farm, as payment of the full amount of the per-person limits under their respective policies.

[*496] No insurance was provided for in the rental agreement for the vehicle in which plaintiff was riding when she was injured. Plaintiff's family vehicles were insured by Amica under a policy which provided underinsured motorist coverage and carried a "single limit" of $ 300,000 for each accident.

Plaintiff and Amica filed [***3] cross-motions for summary judgment in the declaratory judgment action. Amica asserted that because the $ 350,000 combined

287 Ill. App. 494, *; 678 N.E.2d 734, **;
1997 Ill. App. LEXIS 171, ***; 222 Ill. Dec. 862

total of the "per occurrence" limits of Tamminga's poli-
cies exceeded plaintiff's $ 300,000 "single limit" under
the Amica policy, the vehicle driven by Tamminga was
not underinsured. Plaintiff contended that the $ 300,000
"single limit" in her policy must be compared to Tam-
minga's combined per-person liability limits of $ 125,000
in determining whether his vehicle was underinsured.
Plaintiff argued that after the statutory set off was ap-
plied, she was entitled to recover up to $ 175,000 of cov-
erage under the underinsured motorist provision in her
Amica policy. The trial court agreed with the plaintiff's
position and entered summary judgment in her favor.
Amica has challenged that ruling, claiming that the trial
court erred in its interpretation of the statutory language
which defines an underinsured motor vehicle.

The entry of summary judgment is appropriate
where there are no questions of fact and judgment can be
entered as a matter of law. *735 ILCS 5/2-1005* (West
1994); *Kolakowski v. Voris, 83 Ill. 2d 388, 398, 415
N.E.2d 397, 47 Ill. Dec. 392 (1980)*; [***4] *Illinois
Farmers Insurance Co. v. Tabor, 267 Ill. App. 3d 245,
247, 642 N.E.2d 159, 204 Ill. Dec. 697 (1994)*. The in-
terpretation of a statutory provision is a question of law
which is properly decided by summary judgment. *Tabor,
267 Ill. App. 3d at 247*. Courts of review consider the
entry of summary judgment *de novo*. *Outboard Marine
Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90,
102, 607 N.E.2d 1204, 180 Ill. Dec. 691 (1992)*.

*Section 143a-2(4)* of the Illinois Insurance Code de-
fines an underinsured motor vehicle as follows:

> "For the purpose of this Code the term
> 'underinsured motor vehicle' means a mo-
> tor vehicle whose ownership, maintenance
> or use had resulted in bodily injury or
> death of the insured, as defined in the
> policy, and for which the sum of the limits
> of liability under all bodily injury liability
> insurance policies or under bonds or other
> security required to be maintained under
> Illinois law applicable to the driver or to
> the person or organization legally respon-
> sible for such vehicle and applicable to
> the vehicle, is less than the limits for un-
> derinsured coverage provided the insured
> as defined in the policy at the time of the
> accident. The limits [***5] of liability
> for an insurer providing underinsured
> motorist coverage [*497] shall be the
> limits of such coverage, less those
> amounts actually recovered under the ap-
> plicable bodily injury insurance policies,
> bonds or other security maintained on the

underinsured motor vehicle." *215 ILCS
5/143a-2(4)* (West 1994).

In construing a statutory provision, the primary goal
is to ascertain and give effect to the legislature's intent.
*State Farm Fire & Casualty Co. v. Yapejian, 152 Ill. 2d
533, 540-41, 605 N.E.2d 539, 178 Ill. Dec. 745 (1992)*.
To accomplish this goal, courts may consider the reason
and necessity for the law, the evils to be remedied, and
the objectives to be attained. *Yapejian, 152 Ill. 2d at
541*. A court charged with the construction of a statute
will assume that the legislature did not intend to produce
an absurd or unjust result. *Yapejian, 152 Ill. 2d at 541*;
*Sulser v. Country Mutual Insurance Co., 147 Ill. 2d 548,
557, 591 N.E.2d 427, 169 Ill. Dec. 254 (1992)*. A statute
must be read as a whole, and all relevant parts must be
considered by the court. See [**737] *Bonaguro v.
County Officers Electoral Board, 158 Ill. 2d 391, 397,
634 N.E.2d 712, 199 Ill. Dec. 659 (1994)*; [***6]
*Cummins v. Country Mutual Insurance Co., 281 Ill. App.
3d 5, 9, 666 N.E.2d 909, 217 Ill. Dec. 240 (1996)*. If the
language used in the statute is clear, it is unnecessary for
the court to resort to other tools of statutory interpreta-
tion. *Nottage v. Jeka, 172 Ill. 2d 386, 392, 667 N.E.2d
91, 217 Ill. Dec. 298 (1996)*.

Amica has argued that the clear and unambiguous
language found in *section 143a-2* requires that the de-
termination of whether a vehicle is underinsured is not
controlled by the value of the benefits actually received
from the underinsured's carrier, but rather upon the limits
of coverage stated in the underinsured's liability policy.
We do not agree.

Prior cases have held the statutory definition of an
"underinsured motor vehicle" contained in the first sen-
tence of *section 143a-2(4)* is unambiguous and have ig-
nored the legislative history supporting this provision.
See *Golladay v. Allied American Insurance Co., 217 Ill.
App. 3d 465, 648 N.E.2d 157, 207 Ill. Dec. 701 (1995)*;
*Illinois Farmers Insurance Co. v. Tabor, 267 Ill. App. 3d
245, 642 N.E.2d 159, 204 Ill. Dec. 697 (1994)*; *Purlee v.
Liberty Mutual Fire Insurance Co., 260 Ill. App. 3d 11,
631 N.E.2d [***7] 433, 197 Ill. Dec. 430 (1994)*;
*Moriconi v. Sentry Insurance of Illinois, Inc., 193 Ill.
App. 3d 904, 550 N.E.2d 637, 140 Ill. Dec. 752 (1990)*.

However, we find the better-reasoned approach is
that expressed in *Hathaway v. Standard Mutual Insur-
ance Company, 285 Ill. App. 3d 67, 673 N.E.2d 725, 220
Ill. Dec. 581 (1996)*, where the court stated that the leg-
islative history of *section 143a-2(4)* must be considered
in order to prevent an absurd or an unjust result. *Hath-
away, 285 Ill. App. 3d at 71*. Although that decision cen-
tered upon the recovery of underinsured motorist benefits

when multiple claimants are involved, the reasoning employed also governs the case at bar.

[*498]  It is established that the legislature's intent in enacting the underinsured motorist statute was to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance. *Sulser, 147 Ill. 2d at 555.* Accordingly, this provision is designed to assure compensation for an insured's injuries in an amount equal to, but not exceeding, the limit of underinsured motorist coverage specified in the insured's policy. *Sulser, 147 Ill. 2d at 556.*

The aim of this coverage is [***8]  to provide protection for the difference between the insured's claim and the amounts available from the underinsured driver. *Sulser, 147 Ill. 2d at 556.* Accordingly, *section 143a-2* must be construed to allow an insured to "fill the gap" between the benefits paid by the culpable driver's liability carrier and the limit of underinsurance coverage specified in the insured's policy. *Susler, 147 Ill. 2d at 556; Hathaway,* 285 Ill. App. at 73; *Banes v. Western States Insurance Co., 247 Ill. App. 3d 480, 482-83, 616 N.E.2d 1021, 186 Ill. Dec. 579 (1993).*

Contrary to the approach taken in previous cases, we hold that the first sentence of *section 143a-2* cannot be read in isolation to defeat this purpose. *Hathaway,* 285 Ill. App. at 73-74, quoting *Hoglund v. State Farm Mutual Automobile Insurance Co., 148 Ill. 2d 272, 279-80, 592 N.E 2d 1031, 170 Ill. Dec. 351 (1992).* When the language of *section 143a-2* is considered in its entirety, along with the drafters' intent, it is clear that the relevant factor is the amount the injured party can actually recover from the tortious driver. See *Cummins, 281 Ill. App. 3d at 13; Banes, 247 Ill. App. 3d at 486.* Here, that amount [***9]  cannot exceed $ 125,000.

Thus, the insured is entitled to claim benefits in an amount equalling the limit of his underinsured motorist coverage, and the insurer has the right to claim a set off for benefits received from the underinsured's carrier. Under this scenario, the insured is afforded the full value of the coverage purchased,  [**738]  and the insurer is obligated to pay benefits only up to the limit of the coverage selected by the insured, less those amounts actually recovered from the tortfeasor's liability insurer. See *Sulser, 147 Ill. 2d at 556-57; Hathaway, 285 Ill. App. 3d at 69; Cummins, 281 Ill. App. 3d at 9.*

This construction of *section 143a-2* is consistent with the public policy behind the statute, the policyholder's reasonable expectations and the coverage intended to be provided by the policy. See *Hoglund, 148 Ill. 2d at 279.* To hold otherwise would nullify the bargained-for coverage under the policies, and allow the insurance provider to receive premiums which it did not earn. See *Hoglund, 148 Ill. 2d at 278-280.* We are secure in the knowledge that such a windfall to underinsurance providers was not intended by the legislature or contemplated by the [***10]   insurance industry.

[*499]  Amica also contends that in determining whether Tamminga's vehicle was underinsured, the $ 350,000 per-occurrence maximum provided by Tamminga's "split limits" policies must be compared to the $ 300,000 single limit specified in the policy issued by Amica. This argument has no merit. The accident operates to trigger the inquiry as to the extent of the coverage carried by the tortfeasor. Because plaintiff was the sole party injured in the September 15, 1989, accident, the maximum amount of coverage which would ever be applicable to this incident was the $ 125,000 per person limit. See generally *Tabor, 267 Ill. App. 3d at 250-51.*

We hold, therefore, that the trial court correctly determined that Tamminga's vehicle was underinsured after comparing the plaintiff's underinsurance coverage to the benefits she received from Tamminga's liability insurer. That comparison revealed that plaintiff was entitled to claim $ 175,000 in underinsurance benefits. It is precisely for this protection that plaintiff negotiated and paid a premium for the $ 300,000 limit on her underinsured motorist coverage.

For the foregoing reasons, the judgment of the circuit court of Cook County [***11]   is affirmed.

AFFIRMED.

THEIS, J., and QUINN, J., concur.

15936P

********** Print Completed **********

Time of Request: Thursday, July 25, 2013   09:20:20 EST

Print Number:     1825:420024324
Number of Lines: 177
Number of Pages:

Send To:  Kimes, Rodney
          BOLGRIEN KOEPKE & KIMES SC
          542 E GRAND AVE
          BELOIT, WI 53511-6314

Switch Client| Preferences| Help| Sign Out

**My Lexis™**    Search    **Get a Document**    *Shepard's®*    **More**

History    Alerts

*Shepardize*®:                              Go

Signal: ⚠ Caution: Possible negative treatment
Trail: **Unrestricted**

Koperski v. Amica Mut. Ins. Co., 287 Ill. App. 3d 494, 678 N.E.2d 734, 1997 Ill. App. LEXIS 171, 222
Ill. Dec. 862 (Ill. App. Ct. 1st Dist. 1997)

## SHEPARD'S SUMMARY                                                  ⎯ HIDE

### Unrestricted *Shepard's* Summary

No subsequent appellate history.
**Citing References:**

| | |
|---|---|
| ⚠ Cautionary Analyses: | **Distinguished (1)** |
| Positive Analyses: | Followed (1) |
| Neutral Analyses: | Concurring Opinion (1), Explained (1) |
| Other Sources: | Law Reviews (1), Statutes (1), Court Documents (3) |
| **LexisNexis Headnotes:** | HN2 (3), HN3 (2), HN4 (4), HN6 (1) |

Show full text of headnotes

### PRIOR HISTORY ( 0 citing references ) Hide Prior History

▸ **(CITATION YOU ENTERED):**
Koperski v. Amica Mut. Ins. Co., 287 Ill. App. 3d 494, 678 N.E.2d 734, 1997 Ill. App. LEXIS
171, 222 Ill. Dec. 862 (Ill. App. Ct. 1st Dist. 1997)

### CITING DECISIONS ( 8 citing decisions )

### ILLINOIS APPELLATE COURT

✦ Select for Delivery
☐   1. **Cited by:**
State Farm Mut. Auto. Ins. Co. v. Coe, 367 Ill. App. 3d 604, 855 N.E.2d 173, 2006 Ill. App.
LEXIS 945, 305 Ill. Dec. 282 (Ill. App. Ct. 1st Dist. 2006) LexisNexis Headnotes HN2, HN4

367 Ill. App. 3d 604 p.608
855 N.E.2d 173 p.177
305 Ill. Dec. 282 p.286

☐   2. **Cited by:**
State Farm Mut. Auto. Ins. Co. v. Coe, 2006 Ill. App. LEXIS 803 (Ill. App. Ct. 1st Dist. Sept.
5, 2006) LexisNexis Headnotes HN2, HN4

2006 Ill. App. LEXIS 803

3. **Cited by:**

Fid. & Cas. Co. v. Merridew, 327 Ill. App. 3d 51, 762 N.E.2d 570, 2001 Ill. App. LEXIS 935, 261 Ill. Dec. 1 (Ill. App. Ct. 1st Dist. 2001) LexisNexis Headnotes HN2, HN4

327 Ill. App. 3d 51 p.55
762 N.E.2d 570 p.574
261 Ill. Dec. 1 p.5

4. **Cited by:**

Fields v. Chicago Transit Auth., 319 Ill. App. 3d 683, 745 N.E.2d 102, 2001 Ill. App. LEXIS 69, 253 Ill. Dec. 328 (Ill. App. Ct. 1st Dist. 2001) LexisNexis Headnotes HN3

319 Ill. App. 3d 683 p.687
745 N.E.2d 102 p.107
253 Ill. Dec. 328 p.333

5. **Cited by:**

Martin v. Illinois Farmers Ins., 318 Ill. App. 3d 751, 742 N.E.2d 848, 2000 Ill. App. LEXIS 1012, 252 Ill. Dec. 310 (Ill. App. Ct. 1st Dist. 2000) LexisNexis Headnotes HN4

318 Ill. App. 3d 751 p.758
742 N.E.2d 848 p.853
252 Ill. Dec. 310 p.315

6. **Cited by:**

Fort Dearborn Life Ins. Co. v. Holcomb, 316 Ill. App. 3d 485, 736 N.E.2d 578, 2000 Ill. App. LEXIS 710, 249 Ill. Dec. 384 (Ill. App. Ct. 1st Dist. 2000) LexisNexis Headnotes HN3

316 Ill. App. 3d 485 p.491
736 N.E.2d 578 p.583
249 Ill. Dec. 384 p.389

7. **Followed by, Explained in Concurring Opinion at:**

Smith v. Allstate Ins. Co., 292 Ill. App. 3d 432, 686 N.E.2d 74, 1997 Ill. App. LEXIS 518, 226 Ill. Dec. 725 (Ill. App. Ct. 1st Dist. 1997)

**Followed by:**
292 Ill. App. 3d 432 p.436
686 N.E.2d 74 p.77
226 Ill. Dec. 725 p.728

**Explained in Concurring Opinion at:**
292 Ill. App. 3d 432 p.437
686 N.E.2d 74 p.77
226 Ill. Dec. 725 p.728

## 7TH CIRCUIT - U.S. DISTRICT COURTS

8. **Distinguished by:**

Acuity v. Curry, 2013 U.S. Dist. LEXIS 89567 (S.D. Ind. June 26, 2013) LexisNexis Headnotes HN6

2013 U.S. Dist. LEXIS 89567

## ANNOTATED STATUTES ( 1 Citing Statute )

9. 215 Ill. Comp. Stat. 5/143a-2

## LAW REVIEWS AND PERIODICALS ( 1 Citing Reference )

☐  10.  ARTICLE: Survey of Illinois Law: Insurance, 23 S. Ill. U. L. J. 1139 (1999)

## BRIEFS ( 2 Citing Briefs )

☐  11.  Wise v. American Std. Ins. Co., 2011 U.S. 8th Cir. Briefs 3100, 2011 U.S. 8th Cir. Briefs
        LEXIS 2058 (8th Cir. Dec. 12, 2011)

☐  12.  Jund v. Johnnie B's Bar & Grill, Inc., 2011 ND S. Ct. Briefs 10115, 2011 ND S. Ct. Briefs
        LEXIS 97 (N.D. June 6, 2011)

## MOTIONS ( 1 Citing Motion )

☐  13.  WISE v. AMERICAN STD. INS. CO., 2010 U.S. Dist. Ct. Motions 668, 2011 U.S. Dist. Ct.
        Motions LEXIS 33804 (E.D. Mo. Feb. 23, 2011)

        Signal:  ⚠ Caution: Possible negative treatment
      Citation:  **287 Ill. App. 3d 494** (Get this Document , Table of Authorities )
         View: **Full**
        Trail: **Unrestricted**
     Location:  1 - 13 of 13 Total Cites
    Date/Time: Friday, July 26, 2013 9:39:03 AM EDT

 * Signal Legend:
 🟤 -  Warning: Negative treatment is indicated
 ⓘ -  Warning: Negative case treatment is indicated for statute
 🅀 -  Questioned: validity questioned by citing refs
 ⚠ -  Caution: Possible negative treatment
 ✦ -  Positive treatment is indicated
 🅐 -  Citing Refs. With Analysis Available
 🅘 -  Citation information available
 * Click on any Shepard's editorial treatment code (e.g., distinguished, questioned) to view its definition.

 LexisNexis    About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



FOCUS - 4 of 14 DOCUMENTS

**DONNA P. JONES, Guardian of the Estate of JESSICA JONES, a minor, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, PATRICIA C. JUNIOUS, and HARB BOURY, Defendants-Appellees. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY, Counterplaintiffs-Appellants, v. NABIL BOURY; MAYSOON BOURY; MAYSOON BOURY, Special Administrator of the ESTATE OF REENA BOURY, Deceased; RANNIE AL-AMIRI; PAUL LEDER, Special Administrator of the ESTATE OF SUZANNE LEDER, Deceased; and DONNA JONES, Guardian of the ESTATE OF JESSICA JONES, a minor, Counterdefendants-Appellees. HARB BOURY, Individually and as Independent Administrator of the ESTATE OF REENA BOURY, Deceased; NABIL BOURY; MAYSOON BOURY; PAUL LEDER, Individually and as Indpendendant Administrator of the ESTATE OF SUZANNE LEDER, Deceased, JANE LEDER; HASSON AL-AMIRI; RONDA AL-AMIRI; and RANNIE AL-AMIRI, Counterplaintiffs/Cross-Appellants, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY COMPANY; and DONNA P. JONES, Guardian of the ESTATE OF JESSICA JONES, a minor, Counterdefendants/Cross-Appellees.**

Nos. 1-94-2957 and 1-94-3229 (Consolidated)

APPELLATE COURT OF ILLINOIS, FIRST DISTRICT, FIRST DIVISION

*289 Ill. App. 3d 903; 682 N.E.2d 238; 1997 Ill. App. LEXIS 424; 224 Ill. Dec. 677*

June 23, 1997, Decided

**SUBSEQUENT HISTORY:** [***1] Released for Publication August 5, 1997.

**PRIOR HISTORY:** APPEAL FROM THE CIRCUIT COURT OF COOK COUNTY. HONORABLE AARON JAFFE, JUDGE PRESIDING.

**DISPOSITION:** Affirmed in part; reversed and remanded in part.

**COUNSEL:** Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (James J. Hoffnagle and Frank C. Stevens, of counsel), for State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company.

Clifford Law Offices, of Chicago (Robert A. Clifford, Richard Burke, and Robert P. Sheridan, of counsel), for

appellees Harb Boury, Nabil Boury, Maysoon Boury, Paul Leder, Jane Leder, Hassoon Al-Amiri, Ronda Al-Amiri, and Rannie Al-Amiri.

Mirabella & Kincaid, P.C., of Wheaton, and David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Linda Bryceland, of counsel), for Donna Jones.

**JUDGES:** PRESIDING JUSTICE CAMPBELL delivered the opinion of the court. O'BRIEN, J., and GALLAGHER, J., concur.

**OPINION BY:** CAMPBELL

**OPINION**

[*905] [**241] PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of an action brought by the plaintiff, Donna P. Jones, guardian of the Estate of Jessica Jones, a minor, seeking a declaratory judgment that certain automobile liability insurance policies issued by defendants, State Farm Mutual Automobile Insurance Company (State Farm Mutual) and State Farm Fire and Casualty Company (State Farm Fire) (collectively, the Insurance Companies), provided underinsured motorist coverage to plaintiff for an accident occurring on June 23, 1992. The Insurance Companies filed a counterclaim against plaintiff and counterdefendants Nabil Boury; Maysoon Boury; Maysoon Boury, Special Administrator of the Estate of Reena Boury, deceased; Rannie Al-Amiri; and Paul Leder, Special Administrator of the Estate of Suzanne Leder, deceased, [***2] all of whom were occupants in the same car with plaintiff at the time of the accident, seeking a declaratory judgment that: (1) certain automobile [*906] policies issued by them to all of the counterdefendants did not provide excess underinsured motorist coverage to the counterdefendants; and (2) the umbrella policy issued by State Farm Fire provided a total of $ 1,000,000 of excess underinsured motorist coverage to all of the counterdefendants.

Plaintiff filed a motion for judgment on the pleadings and all of the other parties filed cross motions for summary judgment. In two orders entered on August 9, 1994, and August 22, 1994, the trial court granted summary judgment in favor of plaintiff and counterdefendants and against State Farm Mutual that certain automobile policies provided excess underinsured motorist coverage to the parties who were insured under said policies. The trial court granted summary judgment in favor of State Farm Fire on the umbrella policy, ruling that it provided a total of $ 1,000,000 of excess underinsured motorist coverage for all of the counterdefendants. The trial court also ruled that the "each accident" limit, rather than the "each person" limit, applied to the wrongful [***3] death claims of Reena Boury and Suzanne Leder, and that the loss of consortium claims of Ronda and Has soon Al-Amiri were covered for excess underinsured motorist coverage under certain automobile policies issued by State Farm Mutual.

On appeal, the Insurance Companies contend that the trial court erred in granting summary judgment in favor of plaintiffs-counterdefendants as follows: (1) determining that certain Illinois policies of automobile liability insurance provide excess underinsured motorist coverage for the accident of June 23, 1992; (2) determining that the "each accident" limit, rather than the "each person" limit, applied to the wrongful death claims of Reena Boury and Suzanne Leder; (3) determining that the Ohio policies provide more than $ 100,000 of excess underinsured motorist coverage for the claim of Rannie

Al-Amiri; (4) determining that Ronda and Hassoon Al-Amiri have claims for loss of consortium for the injuries to their son, Rannie Al-Amiri; and (5) determining that the Ohio policies provide underinsured motorist coverage for the loss of consortium claims of Ronda and Hassoon Al-Amiri.

Plaintiff and counterdefendants filed cross-appeals, contending that the [***4] trial court erred in determining that the $ 1,000,000 limit of personal liability umbrella insurance on the policy issued to Harb Boury provides underinsured motorist coverage with a total limit of $ 1,000,000 for the claims of all of the occupants of the Ford Explorer at the time of the accident, rather than on a per person basis. For the following reasons, we affirm in part and reverse in part.

## [*907] BACKGROUND

The record reveals the following relevant facts. On June 23, 1992, Nabil Boury was driving a 1992 Ford Explorer on the Eisenhower Expressway near Damen Avenue, Chicago, Illinois, when he was involved in an accident with a vehicle driven by Patricia Junious. Jessica Jones, Maysoon Boury, Reena Boury, Rannie Al-Amiri and Suzanne Leder were passengers in Nabil's Ford Explorer. Jessica Jones was seriously injured in the collision, sustaining brain damage; Reena Boury and Suzanne Leder died as a result of the accident; Rannie Al-Amiri [**242] suffered debilitating brain damage and blindness in one eye; and Nabil Boury and Maysoon Boury both sustained significant injuries.

The vehicle driven by Junious was insured by State Farm Mutual with bodily injury liability limits of $ 20,000 [***5] per person, $ 40,000 per accident. The parties reached a settlement based on the Junious policy and it is not the subject of this appeal.

The Ford Explorer occupied by counterdefendants was covered by an insurance policy issued by State Farm Mutual which provided primary underinsured motorist coverage with limits of $ 100,000 per person, $ 300,000 per accident. The parties do not dispute that this policy provides $ 260,000 of underinsured motorist coverage for all six occupants in the Ford Explorer with the maximum amount collectible by any one occupant being the sum of $ 100,000, minus the amount paid to that person by the tort-feasor's liability insurer. This policy and the trial court's order relating thereto are therefore not involved in this appeal.

In addition to the policy on the Ford Explorer, State Farm Mutual issued the following policies to the following counterdefendants:

    A. Four separate policies to Harb Boury for four other cars: a 1990 Mer-

289 Ill. App. 3d 903, *; 682 N.E.2d 238, **;
1997 Ill. App. LEXIS 424, ***; 224 Ill. Dec. 677

cedes; a 1979 Cadillac; a 1988 Honda; and a 1992 Jaguar, all with $ 100,000/$ 300,000 underinsured motorist limits;

B. Two separate policies to Paul and Jane Leder for a 1991 Chevrolet and a 1987 Chevrolet, both [***6] with $ 100,000/$ 300,000 underinsured motorist limits;

C. One automobile policy to Winslow and Donna Jones for a 1989 Jeep, with underinsured motorist limits of $ 250,000/$ 500,000;

D. Five separate automobile policies to Ronda and Hassoon Al-Amiri for: a 1989 Toyota; a 1987 Acura; a 1988 Toyota; a 1981 Buick; and a 1982 Toyota, all with underinsured motorist limits of $ 100,000/$ 300,000.

State Farm Fire issued one automobile policy to Winslow and Donna Jones on a 1982 Isuzu with $ 100,000/$ 300,000 underinsured motorist limits.

[*908] The five policies issued to the Al-Amiri family members were issued in Ohio to Ohio residents on vehicles registered in Ohio. All other policies were issued in Illinois to Illinois residents on vehicles registered in Illinois.

In addition to the above described automobile policies, State Farm Fire issued a personal liability umbrella policy to Harb Boury which provided a total of $ 1,000,000 of underinsured motorist coverage applicable to all of the occupants of the Ford Explorer.

On August 9, 1994, the trial court entered an order granting in part and denying in part both counterdefendants' motion for summary judgment and the Insurance [***7] Companies' motion for summary judgment as follows:

"3. The automobile liability policy on the Ford Explorer [citations omitted] provides primary underinsured motor vehicle coverage to the occupants of said Ford Explorer at the time of the accident with total applicable coverage of $ 260,000 with the maximum amount that any one person can collect being the sum of $ 100,000 less the amount said person is paid by the tort-feasor's liability insurance.

4. The Court finds that the policy language relied upon by State Farm (i.e. the policy language on page 14 of each State Farm policy) to deny stacking of underinsured motor vehicle coverages is, as a matter of law, ambiguous. Accordingly, the counterdefendants may stack their respective underinsured motor vehicle coverages.

5. The automobile liability policies issued to counterdefendant HARB BOURY, other than the policy on the Ford Explorer [citations omitted] provide excess underinsured motor vehicle coverage with a limit of $ 100,000 for the claim of NABIL BOURY and a limit of $ 100,000 for the claim of MAYSOON BOURY under each policy.

6. The automobile liability policies issued to RONDA or HASSOON AL-AMIRI [citations omitted] [***8] each provide excess underinsured motor vehicle coverage with [**243] a limit of $ 100,000 for the claim of RANNIE AL-AMIRI.

7. The automobile liability policies issued to PAUL and JANE LEDER [citations omitted] each provide excess underinsured motor vehicle coverage for the claim of PAUL LEDER, Special Administrator of the Estate of Suzanne Leder, Deceased. The amount of the excess underinsured motor vehicle coverage under each of the Leder policies (i.e. whether $ 100,000.00, the per person limit, or $ 300,000, the per accident limit) is not determined by this order.

8. The automobile liability policies issued to counterdefendant, HARB BOURY, other than the policy on the Ford Explorer [citations omitted] each provide excess underinsured motor vehicle coverage [*909] for the claim of HARB BOURY, Special Administrator of the Estate of Reena Boury, Deceased. The amount of the excess underinsured motor vehicle coverage under each of the Boury policies (i.e. whether $ 100,000.00 the per person limit, or $ 300,000.00 the per accident limit) is not determined by this order.

9. The personal liability umbrella policy issued to counterdefendant, HARB

289 Ill. App. 3d 903, *; 682 N.E.2d 238, **;
1997 Ill. App. LEXIS 424, ***; 224 Ill. Dec. 677

BOURY, [citations omitted] provides underinsured [***9] motor vehicle coverage with a total limit of liability of $ 1,000,000.00 for the claims of all of the occupants of the Ford Explorer at the time of the accident."

The trial court did not render its order final and appealable.

On August 22, 1994, the trial court entered a second order, granting counterdefendants' motion for summary judgment and denying the summary judgment motion of the Insurance Companies, finding as follows:

"2. The court finds that the underinsured motor vehicle coverage wrongful death claims relating to the deaths of REENA BOURY and SUZANNE LEDER are subject to the $ 300,000.00 "each accident" limits of liability under each of the applicable automobile liability policies.

3. The automobile liability policies issued to HARB BOURY, [citations omitted], each provide excess underinsured motor vehicle coverage with limits of $ 300,000.00 under each policy for the wrongful death claims relating to the death of REENA BOURY.

4. The automobile liability policies issued to PAUL and JANE LEDER [citations omitted], each provide excess underinsured motor vehicle coverage with limits of $ 300,000.00 under each policy for the wrongful death claims relating [***10] to the death of SUZANNE LEDER.

5. The Court finds that Ohio law governs the loss of consortium claims of RONDA and HASSOON AL-AMIRI, the parents of RANNIE AL-AMIRI. Accordingly, the automobile liability policies issued to the AL-AMIRIs [citations omitted] each provide excess underinsured motor vehicle coverage for the loss of consortium claims of RONDA and HASSOON ALL-AMIRI [sic] with a limit of $ 100,000.00 for the claim of each under each of the policies.

The trial court concluded that both its orders of August 9, 1994, and August 22, 1994, were final and appealable, the court having decided all of the issues in the case.

The Insurance companies filed their timely notice of appeal of portions of the trial court's orders of August 9, 1994, and August 22, 1994, on August 26, 1994. Plaintiff filed her notice of appeal of paragraph 9 of the trial court's order of August 9, 1994, on September 21, 1994.

[*910] **OPINION**

Initially, the Insurance Companies contend that the trial court erred in determining that: (1) the applicable provision of the eight Illinois policies of automobile liability insurance is ambiguous and therefore permits stacking of underinsured motor vehicle [***11] coverages; and (2) the same provisions provide excess underinsured motorist coverage for the accident of June 23, 1992.

*Section 143a-2(5)* of the Illinois Insurance Code provides in pertinent part as follows:

"(5) Scope. Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under [**244] this Section under more than one policy or provision coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance * * *." *215 ILCS 5/143a-2(5)* (West 1994).

Thus, the Insurance Code provides that if an insurance company intends to prohibit the stacking of underinsured motorist benefits, it must expressly so state.

The function of the court in construing an insurance policy is to ascertain and enforce the intention of the parties as expressed in the agreement, and the construction given the policy should be a natural and reasonable one. de los *Reyes v. Travelers Insurance Companies,* [***12] *135 Ill. 2d 353, 358, 553 N.E.2d 301, 304, 142 Ill. Dec. 787 (1990).* If the language of an insurance policy is ambiguous, it must be construed against the insurance company and in favor of the insured. *Allstate Insurance Co. v. Gonzalez-Loya, 226 Ill. App. 3d 446, 168 Ill. Dec. 482, 589 N.E.2d 882 (1992).* However, if a policy of insurance is clear and unambiguous, it must be enforced according to its terms. *United States Fire In-*

289 Ill. App. 3d 903, *; 682 N.E.2d 238, **;
1997 Ill. App. LEXIS 424, ***; 224 Ill. Dec. 677

*surance Co. v. Schnackenberg, 88 Ill. 2d 1, 429 N.E.2d 1203, 57 Ill. Dec. 840 (1981).* An insurer is entitled to the enforcement of unambiguous anti-stacking provisions to the extent that such provisions represent terms to which the parties have agreed to be bound. *Bruder v. Country Mutual Insurance Co., 156 Ill. 2d 179, 188-89, 620 N.E.2d 355, 359, 189 Ill. Dec. 387 (1993).* This court cannot strain or torture the language of an insurance policy to create an ambiguity. *Gonzalez-Lova, 226 Ill. App. 3d at 449.*

Each of the Insurance Companies' policies in the present case contain the identical relevant provisions as follows:

"Section III - Uninsured Motor Vehicle - coverage U,

Uninsured Motor Vehicle - Coverage U, and

Underinsured Motor Vehicle - Coverage W

[*911] * * *

**If There is Other Underinsured Motor Vehicle Coverage**

[***13] * * *

3. If the insured sustains bodily injury while occupying a vehicle which is not your car, coverage under this policy applies;

a. as excess to any underinsured motor vehicle coverage which applies to the vehicle as primary coverage, but

b. only in the amount by which it exceeds the primary coverage.

If coverage under more than one policy issued by us or any other insurer applies as excess:

a. the total limits of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

b. we are liable only for our share. Our share is that per cent of the damages that the highest limit of liability of any policy issued by us bears to the total of all underinsured motor vehicle coverage applicable as excess to the accident.

* * *

**Your Car** - Means the **car** or the vehicle described on the declarations page."

The Insurance Companies argue that the above provision clearly provides that there is no excess underinsured motorist coverage applicable whenever the limits of the excess underinsured [***14] motorist coverage are the same as or less than the limits of the primary underinsured motorist coverage. The Insurance Companies argue that with the exception of one Jones policy, which provides excess coverage with limits of $ 250,000/$ 500,000, all of the other policies provide excess underinsured motorist coverage with the same limits as the primary coverage on the Ford Explorer, i.e., $ 100,000/$ 300,000.

However, the trial court determined that the above policy language is ambiguous, and [**245] the Insurance Companies have failed to show otherwise.

The cases relied upon by the Insurance Companies are all distinguishable. First, the Insurance Companies rely on *Grzeszczak v. Farmers Ins. Co., 168 Ill. 2d 216, 659 N.E.2d 952, 213 Ill. Dec. 606 (1995).* There, the plaintiff Molly Grzeszczak's decedent, Jeffrey, was killed while riding in an automobile owned and driven by his brother, Richard, and settled for the policy limits of Richard's insurance. However, Jeffrey was also covered under two separate Farmers' insurance policies, which insured two different automobiles. Both policies provided for underinsured-motorist coverage of $ 100,000 for each person and $ 300,000 for each occurrence. The Grzeszczaks [***15] paid an identical [*912] premium of $ 23.30 for underinsured-motorist coverage under each policy. *Grzeszczak, 168 Ill. 2d at 219-20.*

After settling with Richard's insurer for $ 100,000, Molly demanded payment from Farmers in the amount

of $ 100,000, reasoning that Jeffrey had a combined total of $ 200,000 underinsured-motorist coverage because they paid separate premiums for the two policies. Farmers denied Molly's claim based on anti-stacking clauses contained in each policy. The relevant policy provision stated as follows:

> "With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy." *Grzeszczak, 168 Ill. 2d at 220.*

Molly theorized that the above anti-stacking provision was ambiguous because: (1) the two policies named different insureds: (2) the two $ 23.30 premiums should have purchased two $ 100,000 coverage limits; and (3) Farmers never explained the limits of the coverage, and it was unfair to imply such knowledge to [***16] a layperson. Molly further claimed that the $ 23.30 premium on the second vehicle was exorbitant. *Grzeszczak, 168 Ill. 2d at 221.*

The trial court entered judgment on the pleadings in favor of Farmers, finding that the anti-stacking clause contained no ambiguity and therefore precluded Molly's recovery. This court reversed, agreeing that the anti-stacking clauses in the two policies were clear and unambiguous, but concluding that the $ 23.30 premium for the second car was exorbitant and in violation of public policy. This court found that Molly had established "overreaching" by an insurance company, an exception to the general rule that unambiguous anti-stacking clauses are to be enforced as written. Overreaching is evidenced by exorbitant premiums, which justify a court in refusing to enforce anti-stacking clause contained in insurance contracts. *Menke v. Country Mutual Insurance Co., 78 Ill. 2d 420, 426, 401 N.E.2d 539, 36 Ill. Dec. 698 (1980).*

On appeal, our supreme court reversed the judgment of the appellate court, finding that the language in Molly's policies clearly and unambiguously prohibited the stacking of underinsured-motorist coverage, and that the anti-stacking clauses were [***17] not rendered ambiguous by any of the factors she asserted. See *Grzeszczak, 168 Ill. 2d at 225-233.*

*Allstate v. Gonzalez-Loya, 226 Ill. App. 3d 446, 168 Ill. Dec. 482, 589 N.E.2d 882 (1992),* another case upon which the Insurance Companies rely, is similarly distinguishable. There, the plaintiff attempted to stack under-insured [*913] motorist coverage, arguing that the policy only prohibited stacking of uninsured motorist coverage. This court determined that a plain reading of the policy disclosed: (1) that "uninsured" always includes "underinsured"; and (2) that the anti-stacking provision clearly provided that $ 100,000 was the highest limit available to the Loyas for underinsured motorist benefits, and clearly and unambiguously prohibited the stacking of underinsured motorist benefits.

The construction of insurance policies is a question of law that this court determines de novo. *Shefner v. Illinois Farmers Insurance Co., 243 Ill. App. 3d 683, 686, 183 Ill. Dec. 363, 611 N.E.2d 626 (1993).* "An insurance policy is not to be interpreted in a factual vacuum; it is issue under given factual circumstances. What at first blush [**246] might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract [***18] was issued." *Glidden v. Farmers Auto Insurance Association, 57 Ill. 2d 330, 336, 312 N.E.2d 247 (1974); Kaufmann v. Economy Fire & Casualty Co., 76 Ill. 2d 11, 16, 27 Ill. Dec. 742, 389 N.E.2d 1150 (1979).*

*Grzeszczak* and *Gonzalez-Loya* are factually distinguishable from the present case and therefore inapposite to the disposition of this matter. Unlike the plaintiffs in *Grzeszczak* and *Gonzalez-Loya*, the plaintiff and counterdefendants here are not asserting that certain factors render otherwise unambiguous anti-stacking policy language to be ambiguous. The trial court correctly determined that the anti-stacking policy language here is in fact ambiguous, when applied to the facts and circumstances of the present case.

The Insurance Companies further rely on *Armstrong v. State Farm Mutual Auto. Ins., 229 Ill. App. 3d 971, 172 Ill. Dec. 109, 595 N.E.2d 172 (1992).* There, the plaintiff, Robert Armstrong, was riding a motorcycle when he was struck and seriously injured by a car. The driver of the car had no automobile insurance. At the time of the accident, plaintiff was residing with his mother, Phyliss and his brother Steven. All three family members had automobile insurance policies with State Farm, and all of the policies covered plaintiff [***19] either as a named or unnamed insured. Both a policy on a motorcycle and on a 1979 Chevrolet Malibu named Robert as an insured and had uninsured motorist limits of $ 25,000; a policy on a 1987 Plymouth Colt named Phyliss and had uninsured motorist limits of $ 100,000; and a policy on a 1986 Mazda named Steven and had uninsured motorist limits of $ 50,000. Each policy provided in pertinent part:

> "If There Is Other Uninsured Motor Vehicle Coverage

289 Ill. App. 3d 903, *; 682 N.E.2d 238, **;
1997 Ill. App. LEXIS 424, ***; 224 Ill. Dec. 677

1. Policies Issued By Us to You

If other uninsured motor vehicle coverage issued by us to you also applies to the insured's bodily injury, the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability.

[*914] 2. Other Uninsured Motor Vehicle Coverage Available From Other Sources

Subject to 1. above:

(a) If the **insured** sustains **bodily injury**:

(1) as a pedestrian and uninsured motor vehicle coverage from a policy not issued by us also applies; or

(2) while **occupying your car**, and **your car** is described in the declarations page of another policy not issued by us providing uninsured motor vehicle coverage, we are liable only for our share. [***20] Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all such uninsured motor vehicle coverage applicable to the accident.

(b) If the insured sustains bodily injury while occupying a vehicle not owned by you, your spouse or any relative and uninsured motor vehicle coverage also applies from a policy not issued by us, coverage under this policy applies:

(1) as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but

(2) only in the amount by which it exceeds the primary coverage.

If coverage under more than one policy applies as excess:

(a) the total limits of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary [*915] and the highest limit of liability of any one of the coverages that apply as excess; and

(b) we are liable only for our share. Our share is that per cent of the damages that the highest limit of liability of any policy issued by use bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident." *Armstrong, 229 Ill. App. 3d at 972-73.*

The policy also included "Amendatory [***21] Endorsement 6989G" relating to uninsured motorist coverage, which read:

[**247] " d. **If There Is Other Uninsured Motor Vehicle Coverage**

(1) Item 2(b) is changed to read:

b. If the **insured** sustains **bodily injury** while **occupying** a vehicle which is not **your car**, coverage under this policy applies:

(1) as excess to any uninsured motor vehicle coverage which applied to the vehicle as primary coverage, but

(2) only in the amount by which it exceeds the primary coverage. If coverage under more than one policy applies as excess:

a. the total limits of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability

of any one of the coverages that apply as excess; and

> b. we are liable only for our share. Our share is that per cent of the damages that the highest limit of liability of any policy issued by us bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident."

On cross-motions for summary judgment, State Farm argued that as a result of paragraph 2b of the Amendatory Endorsement 6989G, Robert was limited to collecting $ 100,000 [***22] uninsured motorist coverage. State Farm argued that under the endorsement the policies of Phyliss and Steven were excess coverage and that defendant was entitled only to excess coverage in the amount by which the highest limit of either policy exceeded plaintiff's primary coverage, i.e., the $ 75,000 difference between plaintiff's coverage limit and Phyliss' coverage limit. Plaintiff maintained that because the endorsement was ambiguous, it was not an effective "anti-stacking" provision. *Armstrong, 229 Ill. App. 3d at 974.*

The trial court held that under the policy, as amended, plaintiff was allowed excess uninsured motorist coverage only to the extent of the difference between his primary coverage on the motorcycle, $ 25,000, and the coverage under Phyliss' policy, $ 100,000, i.e., $ 75,000. *Armstrong, 229 Ill. App. 3d at 974.*

On appeal, this court held that the trial court correctly ruled that the amendatory endorsement unambiguously prevented stacking and limited plaintiff to the excess coverage conceded by State Farm. The court stated:

> "Part 2 simply refers to any other source of uninsured motor vehicle coverage. Read naturally, this would include sources [***23] such as policies where the plaintiff is not the named insured. Section 2(b) similarly states, in unambiguous language, that defendant's liability is limited to the highest limit of liability of any of the coverages that apply as excess. This limits plaintiff's total recovery of uninsured motorist coverage from defendant to $ 100,000." *Armstrong, 229 Ill. App. 3d at 976.* (Emphasis in original).

The court further noted that the supreme court of Ohio reached the same result in construing substantially simi-

lar policy language as being sufficiently unambiguous to be enforceable as a valid anti-stacking provision in *Saccucci v. State Farm Mutual Automobile Insurance Co., 32 Ohio St. 3d 273, 512 N.E.2d 1160 (1987).* There, the Ohio supreme court acknowledged "detailed and conflicting, arguments as to the degree of clarity, conspicuousness and ambiguity of the language at issue," and determined that "although the language at issue is somewhat technical, it does not seem that the provision is so [*916] unclear or ambiguous as to be deceptive or unreasonably difficult to understand." *Saccucci, 512 N.E.2d at 1163-64.*

However, three justices dissented from the *Saccucci* decision, [***24] noting that: "the anti-stacking provisions in State Farm's policies are not worded clearly enough to be understood by an ordinary person to preclude the stacking of policies." *Saccucci, 512 N.E.2d at 1164.*

We find *Armstrong* distinguishable on its facts. First, the *Armstrong* case dealt with uninsured motorist coverage, rather than underinsured motorist coverage, which is at issue here. In addition, in *Armstrong,* one insured claimant collected the full amount of [**248] $ 100,000, the highest limit of uninsured motorist coverage under any of the policies combined, $ 75,000 of which represented the excess coverage. By contrast, none of the counterdefendants in the present case will recover the entire Ford Explorer's policy limits of $ 300,000. Finally, the *Armstrong* plaintiff was a named insured on two policies and attempted to aggregate coverage from those policies as well as those held by his mother and brother where he was an unnamed insured. By contrast, plaintiff Jessica Jones was not a named insured on any of the policies at issue.

Although the anti-stacking policy language in *Armstrong* is comparable to the anti-stacking clause in the present case, this court [***25] is not obliged to interpret similar policy language in a similar fashion. The anti-stacking language in the present case, on its face, is not reasonably read to have one specific meaning. The portion of the anti-stacking provision here which reads: "Our share is that percent of the damages that the highest limit of liability of any policy issued by us bears to the total of all uninsured motor vehicle coverage applicable as excess to the accident," (emphasis added) creates an ambiguity as to the amount the insurer will pay out, in light of the policy provision that all applicable policies will be considered in the "equation." We therefore find that under the facts and circumstances of this case, the trial court properly determined that the policy language at issue here is ambiguous and that the policies may therefore be stacked to provide excess coverage.

### THE AL AMIRIS AND THE OHIO POLICIES

The Insurance Companies further contend that the trial court erred in determining that the Al-Amiris have valid claims for loss of consortium under Ohio law for the injuries incurred by Rannie Al-Amiri. The Insurance Companies argue that this issue is controlled by Illinois law, which [***26] provides that the issue of whether the Al-Amiris have a cause of action for loss of consortium is a tort law issue and not a contract issue.

[*917] Under Illinois choice of law principles, the "most significant contacts" must be examined. *Ingersoll v. Klein, 46 Ill. 2d 42, 45, 262 N.E.2d 593 (1970)*. When two or more jurisdictions have an interest in applying their law to a matter in controversy, the following factors are relevant in choosing which rule of law to apply:

> "(a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied." *Estate of Barnes, 133 Ill. App. 3d 361, 366, 478 N.E.2d 1046, 88 Ill. Dec. 438 (1985)*(citing Restatement of the Law 2d, Conflict of Laws 2d, Sec. 6 (1971)).

Where a conflict arises in the area of tort law, the Restatement requires that the law of the State that [***27] has "the most significant relationship to the occurrence and the parties under the principles stated in section 6" should be applied. *Barnes, 133 Ill. App. 3d at 366*; Restatement of the Law 2d, Conflict of Laws 2d, Sec. 145 (1971). Important contacts that the forum will consider in determining the State with the most significant relation are:

> "(a) the place where the injury occurred.
>
> (b) the place where the conduct causing the injury occurred,

> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered." (Restatement of the Law 2d, Conflict of Laws 2d, Sec. 145 (1971).)

However, conflicts analysis under the second Restatement requires more than a mere tallying of contacts in each respective State and a comparison to determine which State has the highest total. Illinois courts [**249] have rejected this "contact counting" approach in favor of a more sophisticated "interest analysis" construction of the Restatement. *Mitchell v. United Asbestos Corp., 100 Ill. App. 3d 485, 426 N.E.2d 350, 55 Ill. Dec. 375 (1981)*. As the court noted in Mitchell:

> "This [***28] approach [interest analysis] is based on the conclusion that 'contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.' ( *Miller v. Miller (1968), 22 N.Y.2d 12, 17, 290 N.Y.S.2d 734, 738, 237 N.E.2d 877, 880; In re Estate of Crichton (1967), 20 N.Y.2d 124, 134-35, 281 N.Y.S.2d 811, 820, 228 N.E.2d 799,* [*918] *806*.) Instead of a mere counting of contacts, what is therefore required is a 'consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue.'" *100 Ill. App. 3d 485, 493, 426 N.E.2d 350, 55 Ill. Dec. 375.*

Accordingly, sections 6 and 145 of the Restatement are construed together as requiring (1) an examination of the relevant policies of the forum; and (2) the relevant policies of other interested states and the basic policies underlying the particular field of law in order to determine whether a contact has any significance for choice of law purposes. This gives rise to a three-step process for conflicts analysis. First, the issue is isolated and the conflict defined. Next, the policies [***29] embraced in the laws in conflict are identified. Finally, contacts of the respective jurisdictions are examined in order to determine which has a superior connection with the occurrence and thus would have a superior interest in having

its policy or law applied. *Barnes, 133 Ill. App. 3d at 367.*

Applying these principles to the present case, a conflict exists between Illinois law and Ohio law in that Illinois has rejected claims of parents for loss of consortium for injuries to a child ( *Dralle v. Ruder, 124 Ill. 2d 61, 124 Ill. Dec. 389, 529 N.E.2d 209 (1988)),* while Ohio has identified a clear policy favoring filial consortium claims for its citizens. In *Gallimore v. Children's Hospital Medical Center, 67 Ohio St. 3d 244, 617 N.E.2d 1052, 1057 (1993),* the Ohio Supreme Court held that a parent may recover damages in a derivative action against a third-party tort-feasor who intentionally or negligently causes physical injury to the parent's minor child for a loss of filial consortium.

Examining the significance of the contacts in light of the differing state policies, the record shows first that the Al-Amiris are residents of Ohio. Within the area of tort law, the domiciles of the parties are generally considered [***30] significant contacts for conflicts analysis because a jurisdiction will normally formulate tort policies with reference to the competing interests of compensating its domiciliaries for injury and of limiting tort recoveries against its domiciliaries. *Estate of Barnes, 133 Ill. App. 3d at 368.* Accordingly, there are strong incentives to apply the tort law of a jurisdiction where all the parties are domiciled because this contact bears a strong relation to the policies and purposes sought to be achieved in the jurisdiction's tort law. See *Ingersoll, 46 Ill. 2d 42, 262 N.E.2d 593.* The simple fact of domicile indicates the jurisdiction's superior interest in having its laws applied in order to give effect to those tort policies. In the present case, because the Al-Amiris live in Ohio, the State Farm insurance policies were sold in Ohio and are controlled by Ohio law, and Rannie's physical [*919] injury will be suffered and endured in Ohio, the trial court properly determined that the laws of Ohio apply.

Next, the Insurance Companies contend that under Ohio law, the maximum amount of excess underinsured motorist coverage provided under all of the Ohio policies for the claim of Rannie Al-Amiri is $ 100,000, [***31] and that the trial court erred in determining that each of the five Al-Amiri policies provides excess coverage of $ 100,000.

This issue is controlled by *Savoie v. Grange Mutual Insurance Co., 67 Ohio St. 3d 500, 620 N.E.2d 809 (1993),* which held that the stacking of underinsured limits of liability in interfamily circumstances cannot be precluded where the policy language at issue is [**250] not clear and unambiguous. Under the circumstances presented here, the Al-Amiris may stack the Boury Ford Explorer policy with all five of their family insurance policies for the claim of Rannie Al-Amiri.

The Insurance Companies incorrectly argue that the Al-Amiris may only stack one policy on top of the Boury Ford Explorer Policy because intrafamily stacking may be prohibited by insurers under Ohio law. Intrafamily stacking only arises where the entire pool of policies against which claims are being made belong to the same family. Here, the Al-Amiris have asserted a claim against the Boury policy and against their own policies. Thus, the interfamily stacking in the present case is permissible.

## "EACH ACCIDENT" VS. "EACH PERSON"

Next, the Insurance Companies contend that the [***32] trial court erred in determining that the claims for the deaths of Reena Boury and Suzanne Leder were subject to the "each accident" limit of the uninsured motorist coverage rather than the "each person" limit of the same. The trial court ruled that the five next of kin of Reena Boury and the three next of kin of Suzanne Leder were entitled to a total recovery of $ 300,000 per policy, under the respective applicable policies.

The relevant policy language provides as follows:

UNDERINSURED MOTOR VEHICLE - COVERAGE W

. . .

Coverage W

The amount of coverage is shown on the declarations page under "Limits of Liability - W - Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one **person**" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person" for all damages [*920] due to **bodily injury** to two or more **persons** in the same accident.

. . .

DEFINED WORDS

Bodily Injury - means bodily injury to a person and sickness, disease or death which [***33] results from it."

In support of their contention, the Insurance Companies rely on *Creamer v. State Farm Mutual Automobile Insurance Co., 161 Ill. App. 3d 223, 112 Ill. Dec.*

*748, 514 N.E.2d 214 (1987).* There, the plaintiffs' minor daughter was struck and injured by an uninsured motorist's vehicle. Plaintiffs demanded payment from State Farm for the minor's bodily injury, their loss of consortium and incurred medical expenses. State Farm tendered the $ 25,000 uninsured motor vehicle policy limits for the minor's bodily injury but denied the plaintiffs' claim for additional recovery. The trial court granted State Farm's motion to dismiss, finding that the plaintiffs' recovery for the minor's bodily injury was limited to the amount specified per accident for bodily injury sustained by one person. *Creamer, 161 Ill. App. 3d at 223-24.*

On appeal, plaintiffs argued that as parents of the minor insured, they are entitled to separate recovery under the policy for loss of consortium and medical expenses. Plaintiffs contended that the policy vaguely defined "bodily injury" as a personal injury and thus, that phrase encompassed their claims.

The insurance policy provided under "damages for bodily injury" that "an insured [***34] is legally entitled to collect from the owner or driver of an uninsured motor vehicle." Each insured is covered "for all damages due to bodily injury to one person." The policy further provided that liability limits were not increased because more than one person is injured when an accident occurs and shall not exceed the uninsured motor vehicle "coverage with the highest limit of liability." The policy defined bodily injury as "bodily injury to a person and sickness, disease or death which results from it." *Creamer, 161 Ill. App. 3d at 224.*

This court construed the policy term "one person" as "one person injured," and determined [**251] that the policy term did not provide a means to extend an insurer's liability to loss of consortium. This court held that loss of consortium is a personal rather than a bodily injury and is generally included and subject to the policy limitations for bodily injury to one person, in affirming the judgment of the trial court. *Creamer, 161 Ill. App. 3d at 225.*

Based on Creamer, the Insurance Companies argue that the total coverage available to the next of kin under any of the automobile policies would be the $ 100,000 "each person" limit.

[*921] Creamer [***35] is distinguishable in that the facts there did not involve the purchase of multiple policies, but rather, involved a situation where the full uninsured motorist coverage limits had been paid by the insurance company, and the parents sought additional payment by reason of their loss of filial consortium, which was not covered under the policy at all.

Counterdefendants respond that where the per person coverage, if applied to each of the beneficiaries, is

equal or greater than the per accident coverage, the per accident coverage should apply. In support, counterdefendants rely on the Ohio case of *Savoie v. Grange Mutual Insurance Co., 67 Ohio St. 3d 500, 620 N.E.2d 809 (1993).* Savoie states that under Ohio law, each person who is covered by an uninsured/underinsured policy and who is presumed to be damaged pursuant to Ohio law has a separate claim subject to a separate per person policy limit. Because Ohio law applies, the trial court properly determined that the Al-Amiris, who are Ohio residents and are insured under State Farm's Ohio policies, are entitled to liability coverage on an "each accident" basis.

## CROSS-APPEAL

Plaintiff and counterdefendants [***36] cross-appeal that portion of the trial court's orders of August 9 and 22, 1994, which declared that the Boury umbrella policy provided underinsured motorist coverage with a total limit of $ 1,000,000 for the claims of all of the occupants of the Ford Explorer at the time of the accident. Plaintiff and counterdefendants contend that the Boury umbrella policy provides $ 1,000,000 in underinsured motorist coverage to each insured.

The Boury umbrella policy provides in relevant part as follows:

> ### "COVERAGE W - Underinsured Motor Vehicle
>
> We will pay, up to the Coverage W limit, the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an underinsured motor vehicle.
>
> These conditions apply:
>
> > 1. You must maintain underlying limits for underinsured motor vehicle coverage equal to the limits listed in the Declarations. If these underlying limits are not maintained, this coverage will not apply.
> >
> > 2. The retained limit for Coverage W is the total amount received for the loss from or on behalf of the liable party plus the amount received from your underlying coverage, but

289 Ill. App. 903, *; 682 N.E.2d 238, **;
1997 Ill. App. LEXIS 424, ***; 224 Ill. Dec. 677

not less than the amount [***37] of your required underlying limits.

3. We will pay only the amount in excess of the retained limit up to the coverage W limit per loss.

[*922] 4. This coverage will apply only when damages are paid by or on behalf of the owner or operator of the underinsured motor vehicle.

5. This coverage will apply in accordance with the terms and conditions of your underlying Underinsured Motor Vehicle Coverage.

* * *

5. Other Insurance. This policy is excess over all other valid and collectible insurance.

* * *

15. Limit Per Loss. This insurance applies separately to each insured, but our limit of liability per loss will be no greater than the individual coverage limits shown in the Declarations."

Plaintiff and Counterdefendants contend that the "Limit Per Loss" provision is ambiguous, and that a reasonable interpretation is that [**252] each insured is entitled to a maximum underinsured motorist coverage recovery of $ 1,000,000, because each of the six injured insureds sustained a separate and distinct "loss" and each insured suffered an "accident."

The Insurance Companies respond that the Boury umbrella policy is a "single limit liability policy," which contains [***38] only a per accident limit, and not a per person limit. The Insurance Companies explain that if only one of the six claimants had suffered serious injury, the entire $ 1,000,000 of underinsured motorist coverage

provided by the umbrella policy would be available to that claimant without regard to any per person limit. The Insurance Companies note that the term "loss" is defined in the policy as follows:

"'loss' means an accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions."

The Declarations Page of the umbrella policy provides that the limits of liability for underinsured motor vehicle coverage are $ 1,000,000. The Insurance Companies respond that the "Limits of Liability" provision clearly and unambiguously provides that there is no per person limit; that the $ 1,000,000 is all that is available per accident.

Neither party has cited authority which is instructive to the present case. Plaintiff and counterdefendants cite *Mason v. Home Insurance Co., 177 Ill. App. 3d 454, 126 Ill. Dec. 841, 532 N.E.2d 526 (1988)*, and *Lyon v. Lumbermens Mutual Casualty Co., 207 Ill. App. 3d 730, 152 Ill. Dec. 701, 566 N.E.2d 388 (1990)*. Both cases are distinguishable. [***39] Mason involved claims against a restaurant arising out of the serving of contaminated food. The court determined that the cause of each injury was the serving of contaminated food to the customer, not the improper preparation of food, therefore there were [*923] multiple occurrences of injuries, one for each customer served. In the present case, there was a single cause of all of the claimants' injuries, i.e., the collision between the Junious car and the Boury Ford Explorer.

In Lyon, the plaintiff owned eight McDonald's restaurants, each insured under one policy, but each assessed a separate premium. A theft from an armored car resulted in the loss of cash receipts from several of the stores, and because of the manner in which the policy was formulated, the court construed the $ 10,000 loss limitation to apply on a per store basis rather than a per theft basis. The facts of Lyon are obviously distinguishable from the facts of the present case.

Nevertheless, we agree with plaintiff and counterdefendants that the "Limit Per Loss" provision in the excess policy is ambiguous, in that the phraseology, "This insurance applies separately to each insured," may be interpreted as providing [***40] a coverage of up to $ 1,000,000 to each insured for bodily injury damages. We therefore hold that up to $ 1,000,000 in umbrella coverage is available to each insured who is entitled to bodily injury damages in connection with the accident of June 23, 1992, and reverse that portion of the trial court's order of August 9, 1994, granting summary judgment in

289 Ill. App. 3d 903, *; 682 N.E.2d 238, **;
1997 Ill. App. LEXIS 424, ***; 224 Ill. Dec. 677

favor of State Farm Fire on the limits of the Boury umbrella policy.

For all of the reasons stated herein, we therefore affirm the judgment of the trial court pertaining to the appeal of the Insurance Companies, reverse the portion of the judgment of the trial court as it pertains to the cross-appeal of the plaintiff and counterdefendants, and remand this matter for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

O'BRIEN, J., and GALLAGHER, J., concur.

15936P

********** Print Completed **********

Time of Request: Thursday, July 25, 2013  09:06:13 EST

Print Number:    1825:420022636
Number of Lines: 560
Number of Pages:

Send To:  Kimes, Rodney
          BOLGRIEN KOEPKE & KIMES SC
          542 E GRAND AVE
          BELOIT, WI 53511-6314



**Harleysville**
a Nationwide Insurance® company

Mid Atlantic Claims Service Center
P.O. Box 198
Harleysville, PA 19438-9940
www.harleysvillegroup.com
Tel 888-634-4440
Fax 877-501-9948

September 13, 2013

CERTIFIED MAIL AND REGULAR MAIL

Rodney W. Kimes, Esquire
Bolgrien, Koepke & Kimes, S.C.
542 East Grand Avenue
Beloit, Wisconsin 53511

Re:  Claimants:  Eric Trotter, Connie Jackson and Kala Petrie
     Claim No.:   W1-005242R-VC-009
     Policy no:   PAAB24953

Dear Mr. Kimes:

Harleysville Lake States Insurance Company ("Harleysville") acknowledges receipt of the claims presented by Eric Trotter, Connie Jackson and Kala Petrie for underinsured motorist coverage under an automobile insurance policy issued to Mr. Trotter. For the reasons stated in this letter, Harleysville must deny these claims for underinsured motorist coverage. By setting forth certain policy terms which limit or exclude coverage, we waive no others, and specifically reserve all of Harleysville's rights under all terms, conditions, limitations, definitions and exclusions of the policy.

On July 14, 2011, Mr. Trotter was driving his vehicle when he was struck from behind by another driver. Connie Jackson and Kala Petrie were passengers in Mr. Trotter's vehicle. All three occupants of Mr. Trotter's vehicle allegedly sustained bodily injury and submitted claims for liability to the at-fault driver's insurer. The at-fault driver had automobile liability coverage with limits of $250,000 per person, $500,000 per accident. That insurer paid its respective policy limit of $500,000 per accident, with $250,000 paid to Mr. Trotter, $238,000 paid to Ms. Jackson, and $12,000 paid to Ms. Petrie for settlement of their claims against the at-fault driver.

Harleysville issued a personal automobile insurance, policy no. PAAB24953, to Eric S. Trotter, effective June 27, 2011 to June 27, 2012. The policy provides coverage for one vehicle, a 2009 Jeep Wrangler, and provides underinsured motorist coverage with a single limit of $500,000 each accident. The policy provides, in relevant part as follows:

INSURING AGREEMENT

A.  We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

    1.  Sustained by an "insured"; and

    2.  Caused by an accident.


EXHIBIT
F

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only after the limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements, unless:

1. We have been given written notice of a "tentative settlement" and decide to advance payment to the "insured" in an amount equal to that settlement; or

2. We and an "insured" have reached a "settlement agreement."

B. "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person "occupying":

a. "Your covered auto"; or

b. Any other auto operated by you.

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury is either:

1. Less than the limit of liability for this coverage; or

2. Reduced by payments to others injured in the accident to an amount which is less than the limit of liability for this coverage.

## LIMIT OF LIABILITY

A. [This paragraph is replaced by an endorsement set forth fully below].

B. Except in the event of a "settlement agreement", the limit of liability for this coverage shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

C. In the event of a "settlement agreement", the maximum limit of liability for this coverage shall be the amount by which the limit of liability for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

The Harleysville policy contains the following endorsement:

## SINGLE UNDERINSURED MOTORISTS LIMIT

## SCHEDULE

**Underinsured Motorists Coverage $_____ each accident**

Paragraph **A.** of the **Limit of Liability** Provision in the Underinsured Motorists Coverage Endorsement is replaced by the following:

## LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages because of "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the Policy is written.

Harleysville must respectfully deny underinsured motorist coverage to Mr. Trotter, Ms. Jackson and Ms. Petrie. These insureds have received payments from the at-fault driver's insurer in a total amount equal to the Harleysville Limit of Liability for underinsured motorist coverage. As a result, Mr. Trotter, Ms. Jackson and Ms. Petrie are not entitled to any underinsured motorist coverage payments under the terms of the Harleysville policy.

The Harleysville policy provides a Limit of Liability of $500,000 in UIM coverage for any one accident. According to the policy, this Limit of Liability is the "maximum limit of liability" Harleysville will pay "regardless of the number of insureds [or] claims made."

The policy also provides that the Limit of Liability for UIM coverage "shall be reduced by all sums paid ... by or on behalf of persons or organizations who may be legally responsible." In this case, the insureds received a combined total of $500,000 from the driver legally responsible for their bodily injuries. Therefore, the Limit of Liability for underinsured motorist coverage for these claims is reduced to zero.

By stating certain policy terms, conditions, limitations and exclusions which limit or exclude coverage, Harleysville waives no others, and specifically reserves all of its rights under all terms, provisions, limitations, definitions and exclusions of the policy.

Sincerely,


Simcha Shaiman
Claims Specialist III
Harleysville Insurance
W. 888-634-4440


Cc: Ms. Barbara James
Williams – Manny, Inc.
555 S. Perryville Road
P.O. box 5466
Rockford, IL 61125